**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INSTITUTIONAL CAPITAL NETWORK, INC., <br><br>                 Plaintiff, <br><br>       v. <br><br> JOHN DOES # 1-10 and COMPANIES A-Z d/b/a www.icapitalnetwork.net, <br><br>                 Defendants. | Case No.: 1:21-cv-02289-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF INSTITUTIONAL
CAPITAL NETWORK, INC.'S MOTION FOR A DEFAULT JUDGMENT AND
<u>PERMANENT INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF THE FACTS ..................................................................................................2

PROCEDURAL HISTORY..........................................................................................................7

ARGUMENT ................................................................................................................................8

I.      ICAPITAL NETWORK IS ENTITLED TO A DEFAULT JUDGMENT BASED
        ON THE WELL-PLEADED ALLEGATIONS IN THE COMPLAINT ...........................8

II.     DEFENDANTS ARE LIABLE FOR CYBERSQUATTING, TRADEMARK
        INFRINGEMENT, AND UNFAIR COMPETITION WARRANTING THE
        ENTRY OF A DEFAULT JUDGMENT .........................................................................11
        A.      Cybersquatting ....................................................................................................11
        B.      Trademark Infringement and Unfair Competition ................................................14

III.    A PERMANENT INJUNCTION SHOULD BE ENTERED ...........................................16

IV.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .................20

V.     THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS
        ACTION ...........................................................................................................................23

CONCLUSION............................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Allied Dynamics Corp. v. Kennametal, Inc.*,
965 F. Supp. 2d 276 (E.D.N.Y. 2013) ..................................................................22

*Am. Lecithin Co. v. Rebmann*,
No. 12-cv-929, 2020 U.S. Dist. LEXIS 131609 (S.D.N.Y. July 24, 2020) ............12

*AW Licensing, LLC v. Bao*,
15-cv-1373, 2016 U.S. Dist. LEXIS 66791 (S.D.N.Y. Jan. 11, 2016) ............14, 16

*Bautista v. ABC Corp.*,
No. 19-cv-3963, 2021 U.S. Dist. LEXIS 62965 (S.D.N.Y. Mar. 31, 2021)........9, 10, 11

*Bittorrent, Inc. v. Bittorrent Mktg. GMBH*,
No. 12-cv-02525, 2014 U.S. Dist. LEXIS 157593 (N.D. Cal. Nov. 5, 2014) .........22

*Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*,
89 F. Supp. 2d 464 (S.D.N.Y. 2000)......................................................................21

*Cengage Learning, Inc. v. Nguyen*,
No. 20-cv-00769, 2021 U.S. Dist. LEXIS 104758 (S.D.N.Y. June 1, 2021) ...................16, 17

*d'Amica Dry d.a.c. v. Primera Mar. (Hellas) Ltd.*,
348 F. Supp. 3d 365 (S.D.N.Y. 2018).....................................................................20

*Diesel S.P.A v. Doe*,
No. 14-cv-4592, 2016 U.S. Dist. LEXIS 2720 (S.D.N.Y. Jan. 8, 2016) ........................ *passim*

*DO Something, Inc. v. San Diego Church, Inc.*,
No. 11-cv-6462, 2012 U.S. Dist. LEXIS 56805 (S.D.N.Y. Apr. 20, 2012) .........21

*Doctor's Assocs. LLC v. Hai*,
No. 19-cv-1968, 2019 U.S. Dist. LEXIS 82399 (E.D.N.Y. May 13, 2019) .........15

*Energy Brands Inc. v. Spiritual Brands Inc.*,
571 F. Supp. 2d 458 (S.D.N.Y. 2008)....................................................................22

*Fermin v. Las Delicias Peruanas Rest., Inc.*,
93 F. Supp. 3d 19  (E.D.N.Y. 2015) .........................................................................9

*First Fitness Int'l, Inc. v. Thomas*,
533 F. Supp. 2d 651 (N.D. Tex. 2008) ..................................................................22

*Freedom Calls Found. v. Bukstel*,
No. 05-cv-5460, 2006 U.S. Dist. LEXIS 19685 (E.D.N.Y. Mar. 7, 2006)........12, 13

*Gucci Am., Inc. v. Curveal Fashion*,
  No. 09-cv-8458, 2010 U.S. Dist. LEXIS 5831 (S.D.N.Y. Jan. 20, 2010) ..........................8, 18

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
  219 F.3d 104 (2d Cir. 2000)...................................................................................................19

*Hirsch v. Sell It Soc., LLC*,
  No. 20-cv-153, 2020 U.S. Dist. LEXIS 184247 (S.D.N.Y. Oct. 5, 2020).........................9, 10

*Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*,
  No. 07-cv-6865, 2007 U.S. Dist. LEXIS 93420 (S.D.N.Y. Dec. 20, 2007) ............................10

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  327 F. Supp. 3d 606 (S.D.N.Y. 2018)....................................................................................17

*Joseph v. HDMJ Rest., Inc.*,
  970 F. Supp. 2d 131 (E.D.N.Y. 2013) ...................................................................................10

*Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*,
  No. 02-cv-9044, 2003 U.S. Dist. LEXIS 6881 (S.D.N.Y. Apr. 28, 2003) ................................9

*Mintz v. Mktg Cohorts, LLC*,
  No. 18-cv-4159, 2019 U.S. Dist. LEXIS 124374 (E.D.N.Y. July 25, 2019)..............12, 13, 14

*Museum of Modern Art v. MOMACHA IP LLC*,
  339 F. Supp. 3d 361 (S.D.N.Y. 2018).....................................................................................15

*OptionsXpress, Inc. v. OptionsXpress Inc.*,
  No. 14-cv-956, 2014 U.S. Dist. LEXIS 102751 (S.D.N.Y. July 28, 2014)............................23

*Panivision Int'l L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ...............................................................................................22

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961)...................................................................................................15

*Salvatore Ferragamo S.p.A. v. Does*,
  No. 18-cv-12069, 2020 U.S. Dist. LEXIS 27582 (S.D.N.Y. Feb. 18, 2020)................... *passim*

*Santana v. Latino Express Rests., Inc.*,
  198 F. Supp. 3d 285 (S.D.N.Y. 2016)..................................................................................9, 11

*Smart Study Co. v. Lizhiwangluo16*,
  No. 19-cv-7725, 2020 U.S. Dist. LEXIS 118014 (S.D.N.Y. July 3, 2020) ................... *passim*

*TCPIP Holding Co. v. Haar Commc'ns., Inc.*,
  99-cv-1825, 2004 U.S. Dist. LEXIS 13543 (S.D.N.Y. July 19, 2004)....................................14

*TigerCandy Arts, Inc. v. Blairson Corp.*,
    No. 09-cv-6215, 2012 U.S. Dist. LEXIS 35269 (S.D.N.Y. Feb. 23, 2012)............................16

*Turn on Prods., Inc. v. Versus Almost Famous Apparel, LLC*,
    No. 18-cv-00625, 2019 U.S. Dist. LEXIS 64328 (E.D.N.Y. Apr. 12, 2019) ..........................15

*Vogster Entm't, L.L.C. v. Mostovoy*,
    No. 09-cv-1036, 2009 U.S. Dist. LEXIS 20936 (E.D.N.Y. Mar. 16, 2009)............................11

**STATE CASES**

*Ingraham v. Carroll*,
    90 N.Y.2d 592 (1997) ..........................................................................................................21

**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1114.......................................................................................................................23

15 U.S.C. § 1116.......................................................................................................................17

15 U.S.C. § 1125............................................................................................................11, 12, 13, 23

28 U.S.C. § 1331.......................................................................................................................23

28 U.S.C. § 1338.......................................................................................................................23

Federal Rule of Civil Procedure 55 ...........................................................................................1, 8

Federal Rule of Civil Procedure 65 ...........................................................................................1, 16

Local Civil Rule 55.2.................................................................................................................1, 8

**STATE RULES**

N.Y. C.P.L.R. § 302..............................................................................................................20, 21, 22

## PRELIMINARY STATEMENT

Plaintiff Institutional Capital Network, Inc. ("iCapital Network") hereby respectfully submits this Memorandum of Law in support of its Motion for a Default Judgment and Permanent Injunction (the "Motion") against Defendants John Does # 1-10 and Companies A-Z d/b/a www.icapitalnetwork.net (collectively, "Defendants"). iCapital Network's Motion is made pursuant to Rules 55(b)(2) and 65(d) of the Federal Rules of Civil Procedure, Local Civil Rule 55.2(b), and Judge P. Kevin Castel's Individual Practices and Default Judgment Procedure.[1]

iCapital Network instituted this action to stop Defendants' blatant cybersquatting, trademark infringement, and unfair competition, and to return a website hijacked by Defendants to iCapital Network, where it rightfully belongs. iCapital Network is a financial technology company that connects advisors and their high net worth investors to leading alternative investment managers through a best-in-class user experience. iCapital Network owns the *www.icapitalnetwork.com* domain name, which it uses to, among other things, advertise its services, provide research to the public, and post job openings. iCapital Network is the owner of certain trademarks related to "iCapital." Defendants created and used the domain name *www.icapitalnetwork.net* (the "Infringing Domain Name"), which redirected to iCapital Network's website at *www.icapitalnetwork.com*, to impersonate iCapital Network and persons associated therewith. Defendants impersonated employees of iCapital Network and used the identities of iCapital Network employees to email individuals regarding alleged job openings at iCapital Network in order to obtain personal sensitive information from such individuals.

---

[1] In further support of the Motion, iCapital Network relies on the: (1) Complaint for Trademark Infringement, Unfair Competition, and Cybersquatting ("Compl.") filed on March 16, 2021 (ECF 1); (2) the Affidavit of Benjamin Smith ("Smith Aff.") filed on March 17, 2021 (ECF 6-3); (3) Affidavit of Benjamin Smith ("Smith Reply Aff.") filed on March 25, 2021 (ECF 17-2); (4) Affidavit of Jordan A. LaVine ("LaVine Reply Aff.") filed on March 25, 2021 (ECF 17-3); and (5) Affidavit of Jordan A. LaVine, Esquire ("LaVine Default Aff.") in support of the Motion.

To further their illegal conduct, Defendants created fake job descriptions and job applications that illegally used iCapital Network's trademarks. Defendants have no affiliation whatsoever with iCapital Network and have no permission to use iCapital Network's trademarks. In fact, Defendants have demanded a $10,000 ransom payment from iCapital Network to cease their infringing and illegal activities and threatened to further infringe iCapital Network's trademarks and defraud unsuspecting consumers until the ransom is paid.

Despite having been properly served with the Summons and Complaint in this action, Defendants have chosen to ignore this lawsuit entirely. In short, Defendants' conduct has been nothing short of outrageous and iCapital Network respectfully requests that the Court enter an Order: (1) finding that Defendants are liable for cybersquatting, trademark infringement, and unfair competition; and (2) permanently enjoining Defendants' further infringement of iCapital Network's trademarks as set forth in the Proposed Order submitted herewith.

## STATEMENT OF THE FACTS

iCapital Network is the owner of valid and subsisting trademark registrations related to "iCapital" in the United States Patent and Trademark Office, including Reg. No. 5,088,562 issued November 22, 2016, Reg. No. 5,269,497 issued August 22, 2017, and Reg. No. 5,269,499 issued August 22, 2017 (the "*iCapital Trademarks*"). Compl. ¶19; Smith Aff. ¶7. iCapital Network owns the *www.icapitalnetwork.com* domain name, which it uses to, among other things, advertise its services, provide research to the public, and post job openings. Compl. ¶3; Smith Aff. ¶10. Since its formation in 2013, iCapital Network has adopted and continuously used the *iCapital Trademarks* in connection with investment services and its business, and has used such trademarks on its website, and on social media. Compl. ¶¶18, 21; Smith Aff. ¶6.

On February 2, 2021, iCapital Network discovered that a third party had created and was using the Infringing Domain Name in order to confuse consumers into believing mistakenly that

the website was authorized by, affiliated with, or an extension of iCapital Network, which it was not. Compl. ¶23; Smith Aff. ¶11. For example, when one visited the Infringing Domain Name, they were immediately redirected to iCapital Network's website thereby leaving the visitor to believe that *www.icapitalnetwork.com* (owned by iCapital Network) and the Infringing Domain Name were one and the same company. Compl. ¶24; Smith Aff. ¶11. iCapital Network did not authorize any third party to register the Infringing Domain Name. Compl. ¶25; Smith Aff. ¶11.

In an attempt to stop Defendants' infringement and illegal conduct, on February 3, 2021, iCapital Network's counsel sent the Infringing Domain Name's registrant a cease and desist email stating that: (a) Defendants' conduct of having the Infringing Domain Name redirect to iCapital Network's website without permission or authorization constitutes trademark infringement in violation of the Lanham Act; and (b) demanding that the registrant immediately cease its unauthorized use of the Infringing Domain Name and agree to transfer the Infringing Domain Name to iCapital Network. Compl. ¶26; Smith Aff. ¶¶12-13. Having not received a response, counsel sent a follow up email on February 5, 2021 requesting a response and stating legal action would pursue if the registrant failed to respond. Compl. ¶28; Smith Aff. ¶14. Also on February 3, 2021, counsel sent Google, LLC, the Infringing Domain Name's registrar, an email complaining of the domain name registrant's conduct and asking that it immediately lock the domain and/or prevent the redirection of Internet traffic to iCapital Network's website. Compl. ¶27; Smith Aff. ¶13. Both the registrant and Google failed to respond. Compl. ¶¶29-30; Smith Aff. ¶14.

On March 10, 2021, iCapital Network's counsel contacted Defendants via email (via *careers@icapitalnetwork.net*) -- this time after learning that Defendants were using the Infringing Domain Name and the email address *careers@icapitalnetwork.net* to impersonate persons at iCapital Network and inviting persons to apply for alleged job openings at iCapital Network.

Compl. ¶31; Smith Aff. ¶16. Counsel once against demanded that Defendants: (a) cease their unauthorized use of the Infringing Domain Name and agree to transfer the Infringing Domain Name to iCapital Network; and (b) stop impersonating persons associated with iCapital Network. Compl. ¶32; Smith Aff. ¶16.

Rather than complying with counsel's request to cease their illegal activities, Defendants sent iCapital Network's counsel an email on March 11, 2021 impersonating an employee of iCapital Network using the ***careers@icapitalnetwork.net*** email address. Compl. ¶¶33-34; Smith Aff. ¶17. The March 11 email:

(a)    Purportedly is being sent by "Wendy Talerman," but the email address used (***careers@icapitalnetwork.net***) is associated with Defendants and the Infringing Domain Name. Wendy Talerman is actually an employee of iCapital Network and has no association whatsoever with Defendants or the Infringing Doman Name. Compl. ¶¶36-37; Smith Aff. ¶19;

(b)    References a job opening at iCapital Network for a "Customer Service Associate" despite the fact that such opening does not exist at iCapital Network. Compl. ¶38 Smith Aff. ¶20;

(c)    Explicitly states it is being sent on behalf of iCapital Network despite the fact that Defendants and the Infringing Domain Name are no way associated with iCapital Network and iCapital Network did not authorize the email. Compl. ¶39; Smith Aff. ¶20;

(d)    Has a signature block that lists iCapital Network's office address in New York and its correct domain name (***www.icapitalnetwork.com***), and includes the ***iCapital Trademarks***. Compl. ¶40; Smith Aff. ¶20; and

(e)    Attaches as separate documents a "job description" and "application form" that illegally infringe on the ***iCapital Trademarks***. Compl. ¶41; Smith Aff. ¶21.

On March 11, 2021, iCapital Network's counsel sent Google, LLC, the Infringing Domain Name's registrar, an email alerting Google that Defendants were using the Infringing Domain Name to impersonate iCapital Network's employees and requesting that Google terminate the Infringing Domain Name. Compl. ¶42; Smith Aff. ¶22. Defendants ignored the correspondence

from iCapital Network's counsel and continued to illegally use the ***iCapital Trademarks*** and the Infringing Domain Name. Compl. ¶43.

On March 18, 2021, iCapital Network received an email from an individual who believed he applied for a "Customer Service Associate" position with iCapital Network. Smith Reply Aff. ¶7. The individual, however, received an email purportedly sent by "Wendy Talerman" about the job opening, but the email address used (***careers@icapitalnetwork.net***) is associated with Defendants and the Infringing Domain Name. *Id*. The individual contacted iCapital Network to inquire as to whether the job opening was legitimate, which it was not. *Id*.

Defendants resorted to using Gmail to impersonate iCapital Network employee Wendy Talerman (via ***wendytalerman1966@gmail.com***) in order to solicit sensitive personal information from unsuspecting consumers who believed they were applying for a job directly with iCapital Network. *Id*. at ¶8. For example, on March 23, 2021, iCapital Network received an email from an individual who stated he received an email from "Wendy Talerman" on March 22, 2021 (via ***careers@icapitalnetwork.net***) about a job application he submitted. *Id*. The signature block of the March 22, 2021 email lists iCapital Network's office address in New York and its correct domain name (***www.icapitalnetwork.com***), but asks the individual to communicate using a Gmail email address (***wendytalerman1966@gmail.com***) which is not associated with iCapital Network or Wendy Talerman. *Id*. The individual further stated he spoke to an individual purportedly associated with iCapital Network on the phone about the job opening, but the person he spoke with is not associated with iCapital Network. *Id*. This individual was inquiring from iCapital Network as to whether the job opening was legitimate, which it was not. *Id*.

Also on March 23, 2021, a third individual contacted iCapital Network by telephone alerting iCapital Network that he purportedly received a job offer and that "Wendy Talerman" said

he would receive $2,000 from iCapital Network to purchase bitcoin. *Id*. at ¶9. The transaction was fraudulent, the individual was not communicating with anyone associated with iCapital Network, and the job offer was not legitimate. *Id*.

Moreover, on March 22, 2021, iCapital Network's counsel provided Defendants (via *careers@icapitalnetwork.net*) with notice that the preliminary injunction hearing scheduled for March 26, 2021 would be conducted telephonically. *Id*. at ¶11; LaVine Reply Aff. ¶4. The March 22, 2021 email was undeliverable so on March 23, 2021, counsel provided Defendants the same notice via a Gmail email address created by Defendants to impersonate an iCapital Network employee (*wendytalerman1966@gmail.com*). *Id*.

In response to counsel's March 23, 2021 email, counsel received a response from Defendants on March 24, 2021 (via *wendytalerman1966@gmail.com*) demanding a $10,000 ransom payment to cease their infringing and illegal activities and threatening to further infringe iCapital Network's trademarks and defraud unsuspecting consumers until the ransom is paid. LaVine Reply Aff. ¶5. Specifically, Defendants stated:

> Dear Jordan,
>
> I do not care. I will continue to spoil your reputation, I am not afraid of your sanctions and courts! I will do this until the wallet I sent you contains $ 10,000 (up to $ 10,000 ...) or until your last client abandons you and rumors: "ICAPITAL scammers of the year, maybe centuries !? "You haven't guessed yet? Then wait ... This is just the beginning.
>
> Tomorrow I will buy all iCapital-like domain names and send 15 million email addresses through my spam machine and redirect to your company as well. Either you send me $ 10,000 today, or it's a war.

*Id*.

On March 24, 2021, counsel received another email from Defendants (via ***wendytalerman1966@gmail.com***) referencing the $10,000 ransom payment and promising to cease their illegal activities once the ransom is paid. *Id.* at ¶6. Specifically, Defendants stated:

Dear Jordan,

Isn't your reputation worth $ 10,000? For you, these are little things, but for me, this is a chance to get out of Nigeria with my 8-child family I promise to leave you alone as soon as the money appears in the wallet. I will remove all domain names immediately and stop defrauding people on behalf of your company.

*Id.*

## PROCEDURAL HISTORY

On March 16, 2021, iCapital Network instituted this action by filing the Complaint. (ECF 1). On March 17, 2021, iCapital Network moved for an *ex parte* temporary restraining order ordering the immediate transfer of the Infringing Domain Name to iCapital Network, the exclusive owner of the ***iCapital Trademarks***, enjoining any further acts of trademark infringement, cybersquatting, and unfair competition by Defendants, and authorizing alternative service by email. (ECF 6, 6-1 to 6-4). By Order dated March 17, 2021, the Court granted iCapital Network's request for *ex parte* relief and set a hearing on iCapital Network's request for a preliminary injunction for March 26, 2021 (the "*Ex Parte* Order"). (ECF 8).

On March 18, 2021, iCapital Network served Defendants with the Complaint and exhibits thereto, Summons, *Ex Parte* Order, and other papers filed in this action as set forth in the Affidavit of Service of Process filed by iCapital Network on March 19, 2021. (ECF 11 and 12). On March 22, 2021, iCapital Network posted a bond in the amount of $5,000.00 pursuant to the *Ex Parte* Order. (ECF 16). Although the *Ex Parte* Order required Defendants to "immediately transfer ownership and control of the Infringing Domain Name to iCapital Network, the lawful owner of the iCapital Trademarks," (ECF 8), Defendants failed to do so. (ECF 23). As such and pursuant to

the *Ex Parte* Order, iCapital Network's counsel provided notice of the *Ex Parte* Order to the Infringing Domain Name's registrar, Google, LLC, who suspended the Infringing Domain Name and placed it on transfer lock. (*Id.*). After a show cause hearing, at which Defendants did not appear, the Court issued a preliminary injunction against Defendants on March 26, 2021 (the "Injunction Order"). (ECF 18). On March 26, 2021, iCapital Network's counsel served a copy of the Injunction Order on Defendants. (ECF 21). On May 11, 2021, iCapital Network confirmed that Google, LLC transferred the Infringing Domain Name to iCapital Network. LaVine Default Aff. ¶16.

On May 13, 2021, the Court held an Initial Pretrial Conference. (ECF 7; Minute Entry dated May 13, 2021). Defendants neither appeared at this conference nor responded to iCapital Network's counsel's request to confer on a Case Management Plan. (ECF 23; Minute Entry dated May 13, 2021). By Minute Entry dated May 13, 2021, the Court granted permission for iCapital Network to move for a default judgment by August 11, 2021.

On May 26 and 27, 2021, iCapital Network filed an application for a Clerk's Certificate of Default against Defendants and on May 27, 2021, the Clerk of the Court entered a Certificate of Default against Defendants.[2] (ECF 25-27). Accordingly, iCapital Network respectfully submits the instant Motion for a default judgment and permanent injunction.

## ARGUMENT

## I.   ICAPITAL NETWORK IS ENTITLED TO A DEFAULT JUDGMENT BASED ON THE WELL-PLEADED ALLEGATIONS IN THE COMPLAINT

iCapital Network is entitled to a default judgment under Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b) because Defendants were properly served and failed to appear and respond to the Complaint. *See* Certificate of Default (ECF 27); *Gucci Am., Inc. v.*

---

[2] A copy of the Clerk's Certificate of Default is attached to the LaVine Default Aff. as Exhibit E.

*Curveal Fashion*, No. 09-cv-8458, 2010 U.S. Dist. LEXIS 5831, at *3 (S.D.N.Y. Jan. 20, 2010) ("'Entry of a default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party.'") (quotation omitted); *Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02-cv-9044, 2003 U.S. Dist. LEXIS 6881, at *6 (S.D.N.Y. Apr. 28, 2003) ("[T]he Defendants, having failed to respond in any way to the Summons and Complaint or otherwise make any appearance in this action and having failed to provide any explanation for its failure to defend, have defaulted willfully.").

In determining whether to grant a motion for default judgment, courts within this District first consider three factors: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Bautista v. ABC Corp.*, No. 19-cv-3963, 2021 U.S. Dist. LEXIS 62965, at *4-5 (S.D.N.Y. Mar. 31, 2021) (citations omitted); *Hirsch v. Sell It Soc., LLC*, No. 20-cv-153, 2020 U.S. Dist. LEXIS 184247, at *4 (S.D.N.Y. Oct. 5, 2020) (citation omitted); *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citation omitted). All three factors weigh in iCaptial Network's favor as to its request for a default judgment against Defendants.

*First*, "a defendant's failure to appear and respond is generally deemed to satisfy a finding of willfulness." *Bautista*, 2021 U.S. Dist. LEXIS 62965, at *5 (citation omitted); *Hirsch*, 2020 U.S. Dist. LEXIS 184247, at *4 (citation omitted); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31 (E.D.N.Y. 2015) (finding defendant's nonresponse sufficient to demonstrate willfulness); *Smart Study Co. v. Lizhiwangluo16*, No. 19-cv-7725, 2020 U.S. Dist. LEXIS 118014, at *4 (S.D.N.Y. July 3, 2020) ("The defendants' failures to respond to the complaints and to the motions for a default judgment indicate willful conduct."). Here, iCapital

Network properly served Defendants with the Summons, Complaint and notice of this motion practice, (ECF 11-12, 23; LaVine Default Aff. ¶17), but Defendants did not answer or respond to the Complaint, enter an appearance, or request an extension of time in which to respond thereby indicating willful conduct.

*Second*, "where a defendant fails to answer the complaint, courts are unable to determine whether the defendant has a meritorious defense." *Bautista*, 2021 U.S. Dist. LEXIS 62965, at *5 (citation omitted); *see also Joseph v. HDMJ Rest., Inc*., 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations[.]") (citations omitted); *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc*., No. 07-cv-6865, 2007 U.S. Dist. LEXIS 93420, at *2-3 (S.D.N.Y. Dec. 20, 2007) ("[T]he Court is unable to determine whether these defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court. Thus, Plaintiff's allegations are admitted.") (citation omitted); *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *4 ("The Court is unaware of any meritorious defense that the defendants would have to the plaintiff's claims."). Accordingly, factor two is satisfied.

*Third*, iCapital Network will be prejudiced and left with no other recourse if denied judgment by default, as Defendant has willfully failed to respond to the Complaint. *Bautista*, 2021 U.S. Dist. LEXIS 62965, at *5-6 (citation omitted); *Hirsch*, 2020 U.S. Dist. LEXIS 184247, at *5 (citation omitted); *see also Indymac Bank*, 2007 U.S. Dist. LEXIS 93420, at *3 ("[D]enying the motion would be unfairly prejudicial to Plaintiff, because both [defendants] have failed to appear, defend, or plead in response to any of the substantive allegations in Plaintiff's Complaint. Pursuant to Rule 55(a), the Court may enter default due to this failure.") (citation omitted); *Smart Study*,

2020 U.S. Dist. LEXIS 118014, at *4 ("[T]he plaintiff will be prejudiced without a default judgment because the plaintiff will have no other remedy.").

Accordingly, all three factors favor granting iCapital Network's Motion for a default judgment.

## II.   DEFENDANTS ARE LIABLE FOR CYBERSQUATTING, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION WARRANTING THE ENTRY OF A DEFAULT JUDGMENT

Once the court determines that the above-referenced factors favor the plaintiff, it must decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted. *Santana*, 198 F. Supp. 3d at 291 (citations omitted); *Bautista*, 2021 U.S. Dist. LEXIS 62965, at *6 (citation omitted). "[T]he Court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but the Court must still determine whether the plaintiff's allegations establish the defaulting defendants' liability as a matter of law." *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *4 (citation omitted).

### A.   Cybersquatting

Defendants are liable for cybersquatting in violation of Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1). The "ACPA was intended to prevent cybersquatting, an expression that has come to mean the bad faith, abusive registration and use of the distinctive trademarks of others as internet domain names, with the intent to profit from the goodwill associated with those trademarks." *Vogster Entm't, L.L.C. v. Mostovoy*, No. 09-cv-1036, 2009 U.S. Dist. LEXIS 20936, at *9-10 (E.D.N.Y. Mar. 16, 2009) (citing *Sporty's Farm, L.L.C. v. Sportsman's Mkt., Inc*., 202 F.3d 489, 495 (2d Cir. 2000)).

To succeed on a claim under the ACPA, a plaintiff must prove that: (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain name complained of is identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark. *Am. Lecithin Co. v. Rebmann*, No. 12-cv-929, 2020 U.S. Dist. LEXIS 131609, at \*20 (S.D.N.Y. July 24, 2020) (citation omitted); *Freedom Calls Found. v. Bukstel*, No. 05-cv-5460, 2006 U.S. Dist. LEXIS 19685, at \*40 (E.D.N.Y. Mar. 7, 2006) (citation omitted). "The phrase 'bad faith intent to profit' is a 'term[] of art in the ACPA and hence should not necessarily be equated with bad faith in other contexts.'" *Rebmann*, 2020 U.S. Dist. LEXIS 131609, at \*20 (quotation and internal quotation marks omitted; alteration in original). The ACPA sets forth a list of factors courts may consider in assessing bad faith intent to profit,[3] but both the statute and the Second Circuit have made clear that these factors are non-exhaustive and permissive rather than mandatory. *Id.* (citing 15 U.S.C. § 1125(d)(1)(B)(i)). "Courts 'need not . . . march through the nine factors seriatim because the ACPA itself notes that use of the listed criteria is permissive.'" *Id*. at 20-21 (quotation omitted; alteration in original).

The *iCapital Trademarks*, including "iCapital" and "iCapital Network," were coined as source identifiers for iCapital Network's successful financial technology company and have no other meaning, thus they are fanciful, arbitrary, and otherwise distinctive. *See Mintz v. Mktg Cohorts, LLC*, No. 18-cv-4159, 2019 U.S. Dist. LEXIS 124374, at \*13 (E.D.N.Y. July 25, 2019);

---

[3] The factors relevant here include: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the Defendants' prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the Defendants' bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the Defendants' intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) the Defendants' provision of material and misleading false contact information when applying for the registration of the domain name, or the person's intentional failure to maintain accurate contact information; and (7) the extent to which the mark incorporated in the Defendants' domain name registration is or is not distinctive and famous. 15 U.S.C. § 1125(d)(1)(B)(i).

*Diesel S.P.A v. Doe*, No. 14-cv-4592, 2016 U.S. Dist. LEXIS 2720, at *18 (S.D.N.Y. Jan. 8, 2016); *see also* Smith Aff. ¶¶5-6. Defendants' Infringing Domain Name, which is identical and confusingly similar to the ***iCapital Trademarks***, by design was intended to impersonate iCapital Network and persons associated therewith. Smith Aff. ¶¶11, 17-21, 23; *see also Freedom Calls*, 2006 U.S. Dist. LEXIS 19685, at *41 (finding that defendants' "freedomcalls.us" domain was confusingly similar to plaintiff's trademarks); *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *21-22 ("[T]he Complaint sufficiently alleges that the domain names are confusingly similar or identical to, and dilutive of, Plaintiff's famous mark. Although many of the domain names incorporate additional phrases or words alongside Plaintiff's 'Diesel' word mark and thus are not identical to Plaintiff's mark, the Court finds that they are sufficiently similar to confuse consumers as to whether the Infringing Websites are affiliated with Diesel and to dilute the strength of the Diesel mark.").

Applying the factors set forth in § 1125(d)(1)(B)(i) here leads to a conclusion of bad faith because: (1) Defendants have no rights in the Infringing Domain Name; (2) the Infringing Domain Name cannot in any way consist of the legal name of Defendants; (3) iCapital Network has never granted Defendants any right, license, or assignment to use the ***iCapital Trademarks***; (4) Defendants are not using the Infringing Domain Name in connection with the *bona fide* offering of any goods or services related to that mark because the Infringing Domain Name simply redirected to iCapital Network's website; (5) Defendants had fair notice of iCapital Network's legal claims to the prior and exclusive use of such marks; and (6) Defendants offered to transfer the Infringing Doman Name to iCapital Network in exchange for a ransom payment. Smith Aff. ¶¶5-23; LaVine Reply Aff. ¶¶5-6; *see also Mintz*, 2019 U.S. Dist. LEXIS 124374, at *14-15 ("'[It] is bad faith to hold a domain name for ransom, where the holder uses it to get money from the

owner of the trademark rather than to sell goods.' Indeed, holding domains hostage to extract ransoms from lawful mark owners was one of the evils targeted by the ACPA…and is precisely what defendants have done and continue to do[.]") (quotation and citation omitted); *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at \*20 ("Given the strength of these factors and the absence of information relevant to other factors that might weigh in favor of Defendants, the Court concludes that Defendants acted in bad faith with an intent to profit therefrom.").

Accordingly, Defendants are liable for cybersquatting under the ACPA and a default judgment should be entered on this claim. *See Mintz*, 2019 U.S. Dist. LEXIS 124374, at \*16-17 (Defendants "seizure of the website was not 'a fair use or otherwise lawful,' and [plaintiff's] allegations establish defendants' liability under the ACPA.") (quoting 15 U.S.C. § 1125(d)(1)(B)(ii)); *Salvatore Ferragamo S.p.A. v. Does*, No. 18-cv-12069, 2020 U.S. Dist. LEXIS 27582, at \*6 (S.D.N.Y. Feb. 18, 2020) ("Ferragamo also alleges that Cybersquatting Defendants acted with 'the intent to tarnish and disparage the Ferragamo Trademarks.' These allegations state a claim for cybersquatting. Default judgment is granted on this claim.") (citation omitted); *AW Licensing, LLC v. Bao*, 15-cv-1373, 2016 U.S. Dist. LEXIS 66791, at \*5 (S.D.N.Y. Jan. 11, 2016) (entering default judgment on plaintiff's cybersquatting claim).

### B.   Trademark Infringement and Unfair Competition

Defendants are liable for trademark infringement and unfair competition under the Lanham Act, because "Defendants used, in commerce, without consent, Plaintiff's 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a manner that is likely to cause confusion." *TCPIP Holding Co. v. Haar Commc'ns., Inc.*, 99-cv-1825, 2004 U.S. Dist. LEXIS 13543, at \*18 (S.D.N.Y. July 19, 2004) (quoting 15 U.S.C. § 1114(1)(a)).

The *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) factors used in this Circuit favor iCapital Network.[4] First, "[w]here a mark is registered, it is presumed to be strong." *Doctor's Assocs. LLC v. Hai*, No. 19-cv-1968, 2019 U.S. Dist. LEXIS 82399, at *10 (E.D.N.Y. May 13, 2019) (citation omitted); *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *10 ("Defendants' deliberate copying of Plaintiff's marks provides circumstantial evidence of the strength of those marks and the high degree of recognition and good will they have with consumers.") (citation omitted). Thus *Polaroid* factor one favors iCapital Network, as does factor two, because the Infringing Domain Name and the mark used in Defendants' emails and fake job applications and descriptions are identical to the ***iCapital Trademarks***. Smith Aff. ¶¶7-9, 15-16, 20-21; Compl. ¶¶40-41. As to factor three, Defendants used the ***iCapital Trademarks*** on job applications, job descriptions, emails, and potential other materials in an effort to impersonate iCapital Network,[5] Smith Aff. ¶¶20-21; Compl. ¶¶40-41, and no gap exists, as Defendants are "using [the ***iCapital Trademarks***] in both the subject matter area the geographic area of Plaintiff[s'] commerce[.]" *Doctor's Assocs.*, 2019 U.S. Dist. LEXIS 82399, at *12 (citation omitted). Thus factors three and four favor iCapital Network as well. There is evidence of actual confusion, Smith Aff. ¶¶15-21, 23; Smith Reply Aff. ¶¶7-9, so factor five favors iCapital Network, and factor six favors Capital Network as there is evidence that a consumer may not

---

[4] These nonexclusive factors are: (1) strength of plaintiff's trademark; (2) degree of similarity between the marks; (3) competitive proximity of the products; (4) likelihood that the senior user will enter the same market as the junior user (*i.e.*, bridge the gap); (5) evidence of actual confusion; (6) sophistication of purchasers; (7) evidence that the imitative mark was adopted in good faith; and (8) respective quality of the products. *Id.*; *Turn on Prods., Inc. v. Versus Almost Famous Apparel, LLC*, No. 18-cv-00625, 2019 U.S. Dist. LEXIS 64328, at *6-7 (E.D.N.Y. Apr. 12, 2019) (citation omitted).

[5] To be "related" for purposes of trademark law, "'conflicting goods or services do not have to be in direct competition with one another.'" *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 377 (S.D.N.Y. 2018) (quotation omitted). "'Rather, the relevant question is whether they are so related that a reasonable buyer is likely to think that a defendant's goods or services are somehow connected with or sponsored by the plaintiff, due to similar marks.'" *Id.* (quotation and internal quotation marks omitted). By impersonating iCapital Network and its employees, a reasonable consumer would believe that Defendants' services are somehow connected with or sponsored by iCapital Network.

understand the difference between iCapital Network and Defendants. Smith Aff. ¶¶15-21, 23; Smith Reply Aff. ¶¶7-9. Defendants' bad faith is evidenced *supra* at Section I, thus factor seven favors iCapital Network as does factor eight because Defendants do not produce any products.

Accordingly, Defendants are liable for trademark infringement and unfair competition and a default judgment should be entered on this claim. *See Salvarote Ferragamo*, 2020 U.S. Dist. LEXIS 27582, at \*4-5 (entering default judgment on plaintiff's trademark infringement claim and unfair competition claims after finding that plaintiff owned the federally registered trademarks, defendants used the trademarks without plaintiff's consent, and defendants' actions likely caused consumer confusion); *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at \*13 (granting default judgment on plaintiff's trademark infringement claim and stating, "[a]ssessing [the *Polaroid*] factors together, the Court concludes that they weigh clearly in favor of Plaintiff, and therefore that Plaintiff has demonstrated a likelihood of consumer confusion."); *AW Licensing*, 2016 U.S. Dist. LEXIS 66791, at \*5 (finding defendants liable for trademark infringement and entering default judgment).

## III.    A PERMANENT INJUNCTION SHOULD BE ENTERED

iCapital Network requests that the Court permanently enjoin Defendants, pursuant to Rule 65(d), from directly or indirectly infringing the ***iCapital Trademarks*** in the same manner that the Court has already enjoined such infringement in issuing the temporary restraining order and preliminary injunction. "[A] court may issue an injunction when the moving party establishes that there is a statutory basis for relief and that it 'meets the prerequisites for the issuance of an injunction.'" *TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09-cv-6215, 2012 U.S. Dist. LEXIS 35269, at \*20 (S.D.N.Y. Feb. 23, 2012) (quotation omitted), *report and recommendation adopted by*, 2012 U.S. Dist. LEXIS 75182 (S.D.N.Y. May 30, 2012); *Cengage Learning, Inc. v. Nguyen*,

No. 20-cv-00769, 2021 U.S. Dist. LEXIS 104758, at *27 (S.D.N.Y. June 1, 2021) (citation omitted); *see also Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *16 ("An injunction on a motion for default judgment is appropriate if the plaintiff can show that '(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'") (quotation omitted). Given Defendants' conduct here, an injunction is critical, as "the best way to prevent future infringement is to enjoin future infringement." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018).

The Lanham Act explicitly vests the Court with the power to grant injunctive relief. *See* 17 U.S.C. § 1116(a) (courts "have power to grant injunctions, according to the principles of equity"). Indeed, courts in this District routinely issue permanent injunctions as part of default judgments in trademark infringement and cybersquatting cases. *See, e.g.*, *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *27-29; *Salvarote Ferragamo*, 2020 U.S. Dist. LEXIS 27582, at *10-12; *Cengage Learning*, 2021 U.S. Dist. LEXIS 104758, at *27-29; *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *16-19.

A party seeking an injunction must demonstrate: (1) success on the merits; (2) irreparable harm absent the injunction; (3) the lack of an adequate remedy at law; (4) that the balance of hardships between the plaintiff and the defendants favor the plaintiff; and (5) that the public interest would not be disserved by a permanent injunction. *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *17 (citing *eBay Inc. v. MerExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *Salvarote Ferragamo*, 2020 U.S. Dist. LEXIS 27582, at *10-11 (citation omitted); *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *27 (citation omitted). iCapital Network has satisfied these factors.

*First*, iCapital Network has established success on the merits as set forth in Section II, *supra*. Further, "Defendants' default constitutes an admission of liability." *Diesel S.P.A.*, 2016

U.S. Dist. LEXIS 2720, at *27-28 (citation omitted); *see also Gucci*, 2010 U.S. Dist. LEXIS 5831, at *6 ("[T]he Court finds that 'plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability.'") (quotation omitted).

*Second*, Defendants' operation of the Infringing Domain Name and use of the ***iCapital Trademarks*** has undoubtedly irreparably harmed iCapital Network. Smith Aff. ¶¶23-25. By confusing consumers, Defendants compromise the goodwill and distinctiveness invested by the ***iCapital Trademarks*** thereby diminishing iCapital Network's reputation. As there is a strong likelihood that people who received email communications from Defendants impersonating iCapital Network employees with job applications, job descriptions and other materials containing the ***iCapital Trademarks*** were misled and confused about who owns the ***iCapital Trademarks*** and whether Defendants and iCapital Network are related – irreparable harm is easily shown. *See Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *28 ("'In a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'") (quotation omitted). Irreparable harm is further demonstrated because Defendants' refusal to defend this action creates the threat of continued infringement. *See Salvarote Ferragamo*, 2020 U.S. Dist. LEXIS 27582, at *11 ("[I]rreparable injury is demonstrated because 'Defendants' refusal to defend this action creates a threat that they will continue to infringe [Ferragamo's] trademarks unless permanently enjoined from doing so.'") (quotation omitted; alteration in original).

*Third*, iCapital Network has no adequate remedy at law. The harm caused by Defendants, as described above, cannot be measured, and iCapital Network cannot be made whole. *See Salvarote Ferragamo*, 2020 U.S. Dist. LEXIS 27582, at *11 ("[M]onetary damages are inadequate

'[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable.'") (quotation omitted). Moreover, without a permanent injunction, there is nothing to stop Defendants from simply continuing their infringing activities through the use of other domain names. And by Defendants' default, iCapital Network has no assurances it has been able to determine all of the infringing activities by Defendants. *See Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *28 ("[A] defendant's default gives rise to an inference that defendant may continue its infringing conduct. Legal remedies are therefore inadequate to protect Diesel.") (citation omitted).

*Fourth*, the balance of hardships favors granting a permanent injunction because such an injunction merely requires Defendants to comply with the Lanham Act and the law, and iCapital Network stands to incur substantial further harm if an injunction is not granted. In contrast, Defendants have defaulted and thereby failed to allege any hardship at all. *See Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *29 ("Because of Defendants' conduct, Diesel faces irreparable and ongoing harm to its legitimate business associated with those marks. In contrast, Defendants have defaulted in this case and thereby failed to allege any hardship at all.") (citation omitted).

*Fifth*, a permanent injunction preventing Defendants from continuing to use the ***iCapital Trademarks*** will clearly not disserve the public interest and will reinforce iCapital Network's private rights. Federal and state trademark laws are premised on protecting consumers from confusion as to the true source and affiliation of goods and services. *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000) ("Trademark laws exist to protect the public from confusion."). Because of the likelihood of confusion in this action, the public interest would not be disserved by the issuance of an injunction. *See Salvarote Ferragamo*, 2020 U.S. Dist. LEXIS 27582, at *11-12 ("[T]he public interest favors an injunction: 'the public has an

interest in not being deceived  — in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.'") (quotation omitted).

In sum, all of the factors weigh in favor of a permanent injunction prohibiting Defendants' further infringement of the *iCapital Trademarks*.

## IV.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

On a motion for a default judgment, a district may, but is not required to, investigate whether it has personal jurisdiction over a default defendant. *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *8 n.3; *d'Amica Dry d.a.c. v. Primera Mar. (Hellas) Ltd*., 348 F. Supp. 3d 365, 389 (S.D.N.Y. 2018). Here, the Court has personal jurisdiction over Defendants.

In order to exercise personal jurisdiction over a defendant, the court must look to whether there is jurisdiction under the applicable statute and whether the exercise of jurisdiction is consistent with due process. *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *8 (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). The law of the forum state, in this case New York, applies to the first inquiry. New York's personal jurisdiction statute permits jurisdiction over non-domiciliaries, which all the Defendants in these cases are, who "in person or through an agent...commits a tortious act without the state causing injury to person or property within the state…if he" (1) "engages in any other persistent course of conduct…in the state"  (N.Y. C.P.L.R. § 302(a)(3)(i)); or (2) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" N.Y. C.P.L.R. § 302(a)(3)(ii).

Personal jurisdiction is proper here under both § 302(a)(3)(i) and (ii). Defendants engaged in tortious conduct outside of New York (cybersquatting on *www.icapitalnetwork.net* and infringing the *iCapital Trademarks*) that caused injury to iCapital Network within the state

(diluting the **iCapital Trademarks**). *See Cello Holdings, L.L.C. v. Lawrence-Dahl Cos*., 89 F. Supp. 2d 464, 470 (S.D.N.Y. 2000); *see also DO Something, Inc. v. San Diego Church, Inc*., No. 11-cv-6462, 2012 U.S. Dist. LEXIS 56805, at *4 (S.D.N.Y. Apr. 20, 2012) ("Plaintiff, a New York corporation, sufficiently alleges injury to its person or property in New York because 'the first effects of trademark infringement . . . are typically felt where the trademark owner resides and conducts business, and can include injury in the form of damage to goodwill, lost sales, or lost customers.'") (quotation omitted; alteration in original).

With respect to § 302(a)(3)(i), Defendants engaged in a "persistent course of conduct" in New York by infringing the trademarks of a New York corporation on numerous occasions, regularly impersonating an employee of iCapital Network who works in New York in order further their illegal conduct, and attempting to extort a New York corporation. *See Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997) ("CPLR 302(a)(3)(i) necessitates some ongoing activity within New York state[.]") (emphasis omitted).

With respect to § 302(a)(3)(ii), Defendants certainly expected, or reasonably should have expected, that their actions to have consequences in New York by engaging in their illegal and infringing activities. *See Cello Holdings*, 89 F. Supp. 2d at 470. It is apparent that when Defendants registered the Infringing Domain Name, they "knew, or should have known, that any such efforts would have an impact in New York." *Id*. In fact, Defendants tried to extort iCapital Network and sell the Infringing Domain Name to iCapital Network. *See id*. Finally, although the record is less clear in this respect, Defendants are believed to derive substantial revenue from interstate or international commerce. Based on Defendants' conduct, Defendants regularly infringe trademarks and extort the rightful holders of those trademarks for financial gain.

Accordingly, personal jurisdiction over Defendants is proper. *See Panivision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (holding that a defendant who "engaged in a scheme to register [plaintiff's] trademarks as his domain names for the purpose of extorting money from [plaintiff]" was subject to personal jurisdiction in the plaintiff's state); *First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 656 (N.D. Tex. 2008) ("Courts in this District have repeatedly held that '[t]he exercise of [specific] personal jurisdiction over an individual for his Internet activities, including allegations of trademark infringement and cybersquatting, is proper when a defendant intentionally directs his tortious activities toward the forum state.'") (quotation omitted; alterations in original); *Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-cv-02525, 2014 U.S. Dist. LEXIS 157593, at *11-20 (N.D. Cal. Nov. 5, 2014) (finding personal jurisdiction where a trademark infringement extortion scheme hurt plaintiff's reputation, and therefore injured the California-based plaintiff in California despite the cybersquatting occurring in Germany).

Because exercising personal jurisdiction over Defendants in this case complies with Section 302(a), it also comports with constitutional due process. *Smart Study*, 2020 U.S. Dist. LEXIS 118014, at *10 (citation omitted); s*ee also Energy Brands Inc. v. Spiritual Brands Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008) ("[A] a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard.") (citation omitted); *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 296 (E.D.N.Y. 2013) ("Although the constitutional due process issue is a separate question, '[o]rdinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits.'") (quotation omitted; alterations in original).

## V.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because this case arises under the ACPA, 15 U.S.C. § 1125(d)(1), and United States trademark laws, including 15 U.S.C. §§ 1114 and 1125. *See OptionsXpress, Inc. v. OptionsXpress Inc.*, No. 14-cv-956, 2014 U.S. Dist. LEXIS 102751, at *3-4 (S.D.N.Y. July 28, 2014) ("This Court has subject matter jurisdiction over plaintiffs' federal claims under the Lanham Act and ACPA. 28 U.S.C. §§ 1331, 1338. This Court also has supplemental jurisdiction over plaintiffs' claims under New York law, as these claims 'are so related to' the federal claims 'that they form part of the same case or controversy.'") (quoting 28 U.S.C. § 1367(a)).

## <u>CONCLUSION</u>

For the foregoing reasons, iCapital Network respectfully requests that the Court grant iCapital Network's request for a default judgment and permanent injunction against Defendants and enter the Proposed Order submitted herewith.

**FLASTER/GREENBERG PC**

Dated:  June 15, 2021

<u>*/s/ Jordan A. LaVine*</u>
Jordan A. LaVine, Esquire
295 Madison Avenue, 12th Floor
New York, NY 10017
Tel: (215) 279-9839
Fax: (215) 279-9394
jordan.lavine@flastergreenberg.com

*Attorneys for Plaintiff Institutional Capital Network, Inc.*